AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Denilson Mendoza Licona a/k/a Steven Rodrigues | ) Case No. 3:24-mj-70820 MAG |
| | ) |
| *Defendant(s)* | ) |

**FILED**
May 30 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  May 29, 2024  in the county of  San Francisco  in the
Northern  District of  California  , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1) and (b)(1)(C) | Possession with Intent to Distribute Fentanyl<br>Maximum penalties:<br>• Imprisonment: 20 years (21 U.S.C. § 841(b)(1)(C))<br>• Fine: $1 million (21 U.S.C. § 841(b)(1)(C))<br>• Supervised Release: Min. 3 years – Max. life (21 U.S.C. § 841(b)(1)(C))<br>• Special Assessment: $100 (18 U.S.C. § 3013(a)(2)(A))<br>• Forfeiture: 21 U.S.C. § 853(a) \| Deportation \| Denial of Federal Benefits |

This criminal complaint is based on these facts:

See attached affidavit of HSI Special Agent Regan Bates

☑ Continued on the attached sheet.

Approved as to form /s/ Patrick O'Brien
AUSA Patrick O'Brien

/s/ Regan Bates
*Complainant's signature*

Regan Bates, HSI Special Agent
*Printed name and title*

Sworn to before me by telephone.

Date:  05/29/2024

*Judge's signature*

City and state:  San Francisco, CA    Hon. Sallie Kim, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Regan Bates, a Special Agent with Homeland Security Investigations (HSI) having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging DENILSON AMILCA MENDOZA-LICONA with 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), based on his possession with the intent to distribute a mixture or substance containing fentanyl, on or about May 29, 2024, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Special Agent (SA) with the U.S Department of Homeland Security (DHS), Homeland Security Investigations (HSI). I have been employed by HSI since May 2023. I have successfully completed the Criminal Investigator Training Program (CITP), and

Homeland Security Investigations Special Agent Training (HSISAT) at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia.

5. Prior to working for HSI, I was employed by Customs and Border Protection (CBP) Office of Field Operations (OFO) since January 2022, where I helped facilitate the flow of customs and immigration into the San Francisco Port of Entry (POE).

6. As a HSI Special Agent, I am currently assigned to investigate drug trafficking organizations as a member of HSI High Intensity Drug Trafficking Area (HIDTA) Transnational Narcotics Team (TNT). I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I have been cross designated by the Drug Enforcement Agency (DEA) and am empowered to investigate and make arrest for offenses under Title 21 of the United States Code. I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). I have assisted in the execution of search warrants for controlled substances and/or related paraphernalia, and other evidence of violations of federal drug statutes. I have participated in investigations targeting individuals and organizations trafficking controlled substances as defined in Title 21, United States Code, Section 802(6).

7. I have personally participated in the investigation discussed in this affidavit. I am familiar with the facts and circumstances of the investigation through my personal participation in it based on several investigative techniques, including discussions with agents of the DEA and with other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

8.      **Possession of Controlled Substance with Intent to Distribute**.  Under Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance.  Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

9.      On or about May 29, 2024, MENDOZA-LICONA was arrested by agents from DEA, HSI, and Federal Bureau of Investigations after being observed engaging in hand-to-hand drug transactions in the vicinity of Larkin Street between Fulton Street and Grove Street in San Francisco, California, in the Northern District of California. Based on the facts described below, there is probable cause that MENDOZA-LICONA violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), based on his possession with intent to distribute fentanyl.

10.     On or about May 29, 2024, at approximately 1:00 a.m., law enforcement personnel were conducting surveillance remotely in the vicinity of Larkin Street between Fulton Street and Grove Street via a live video surveillance device. I personally reviewed the surveillance video described below and have spoken with other law enforcement who also reviewed the video surveillance and participated in this investigation.

11.     The vicinity of Larkin Street between Fulton Street and Grove Street is located within San Francisco's Tenderloin district.  It is an area known for open-air narcotics trafficking at all hours of the day and night.  At the time of the surveillance described in this affidavit, the sidewalk was crowded with numerous people, several of whom appeared to be engaged in drug use activity and others engaged in drug dealing activity.

12.     Between approximately 1:00 a.m. and approximately 2:03 a.m., law enforcement personnel specifically observed a male wearing a white and black puffy coat, a red shirt or sweatshirt underneath the coat, and a partial face and head covering engaging in what appeared to be hand-to-hand drug transactions on Larkin Street between Fulton Street and Grove Street in San Francisco's Tenderloin neighborhood.  This individual was later identified as

MENDOZA-LICONA after his arrest.  During this same time period, law enforcement personnel recognized coordination between MENDOZA-LICONA and another individual in blue pants, a grey sweatshirt, and a dark jacket, identified in this affidavit as INDIVIDUAL 1.  INDIVIDUAL 1 was carrying a colorful Marshalls shopping bag and wearing a backpack during this time period.  As explained below, when both MENDOZA-LICONA and INDIVIDUAL 1 were arrested, law enforcement officers found fentanyl and other controlled substances packaged in small plastic baggies inside a black plastic bag located in INDIVIDUAL 1's Marshalls shopping bag.

13. At approximately 1:25 a.m., law enforcement personnel observed MENDOZA-LICONA holding a black plastic bag with Individual 1 next to him holding a Marshalls shopping bag.

14. At approximately 1:30 a.m., law enforcement personnel observed MENDOZA-LICONA crouching down in front of other individuals with INDIVIDUAL 1 standing next to him.  At approximately 1:31 a.m., law enforcement personnel observed MENDOZA-LICONA who was crouching down look up and survey his surroundings.  Around this same time, INDIVIDUAL 1 also surveys their surroundings.  Shortly after, an individual who appears to be talking to MENDOZA-LICONA reaches down, appears to pick something up near MENDOZA-LICONA, and walks away, and MENDOZA-LICONA stands up a short time later.  Based on my training and experience, it is common for narcotics traffickers to crouch down to measure out narcotics and conceal their behavior during drug deals.

15. At approximately 1:35 a.m., law enforcement observed MENDOZA-LICONA use his right hand to conduct a hand-to-hand transaction with an unknown individual wearing dark colored clothing.  During this exchange, MENDOZA-LICONA handed a small substance to the unknown individual, and the unknown individual handed MENDOZA-LICONA what appeared to be cash.  During this exchange, INDIVIDUAL 1 was standing next to MENDOZA-LICONA.

16. A short time later, at approximately 1:47 a.m., law enforcement personnel observed MENDOZA-LICONA conduct a hand-to-hand transaction with an unknown individual wearing dark clothing. During this exchange, MENDOZA-LICONA was observed holding a black plastic bag, and INDIVIDUAL 1 was once again standing next to MENDOZA-LICONA. At approximately 1:49 a.m., law enforcement personnel observed MENDOZA-LICONA reach into INDIVIDUAL 1's Marshalls shopping bag.

17. At approximately 1:59 a.m., law enforcement personnel observed MENDOZA-LICONA and INDIVIDUAL 1 walk on Larkin Street toward Grove Street and cross Grove Street together at approximately 2:00 a.m.

18. During this time period, INDIVIDUAL 1 and MENDOZA-LICONA appeared to be coordinating their movements, often moving around in the same general direction on the Larkin Street sidewalk and standing close to each other during what appeared to be drug transactions. Based on my training and experience and my discussions with other law enforcement agents familiar with drug trafficking in the Tenderloin, this behavior and coordination is common among narcotics traffickers and those who hold stashes of narcotics for them. Law enforcement also observed MENDOZA-LICONA and INDIVIDUAL 1 surveying their surroundings during this time, which is common behavior by drug dealers and those assisting them when operating in an area well-known by law enforcement for drug trafficking activity like the Tenderloin.

19. At approximately 2:03 a.m., after observing these prior hand-to-hand suspected narcotics transactions, law enforcement personnel converged on MENDOZA-LICONA and INDIVIDUAL 1's location, identified themselves as law enforcement, and arrested MENDOZA-LICONA and INDIVIDUAL 1 for the suspected distribution of a controlled substance.

20. At the scene of the arrest, law enforcement personnel conducted a search of INDIVIDUAL 1's Marshalls bag and located the following in a black plastic bag inside the Marshalls bag:

    i.    one small clear plastic bag containing a white powdery substance suspected to be fentanyl, which was determined to weigh 219.6 grams (including packaging);

    ii.    one small clear plastic bag containing a white crystal like substance suspected to be methamphetamine, which was determined to weigh 106.5 grams (including packaging);

    iii.    one small clear plastic bag containing a white chunky substance suspected to be crack cocaine, which was determined to weigh 30.2 grams (including packaging);

    iv.    one small clear plastic bag containing M-30 fentanyl pills, which was determined to weigh 27.1 grams (including packaging); and

    v.    one small plastic bottle containing alprazolam, which was determined to weigh 82.1 grams (including packaging);

21. At the scene of the arrest, law enforcement personnel conducted a search of MENDOZA-LICONA and located the following:

    i.    one small clear plastic bag containing marijuana, which was determined to weigh 12.9 grams (including packaging).

22. At the scene of the arrest, law enforcement personnel conducted a search of INDIVIDUAL 1 and located the following:

    i.    one small clear plastic bag containing a white powdery substance suspected to be fentanyl, which was determined to weigh 2.3 grams (including packaging).

23. The substances described in paragraphs 20(i)(ii)(iii)(iv) above were tested using a Tru-Narc device. Each substances tested presumptively positive for the substance listed in the respective paragraph.

24. INDIVIDUAL 1 has a criminal history that includes charges for possession of controlled substances. Individual 1 was booked at San Francisco County Jail on a pending arrest local arrest warrant in Eureka, California.

## **CONCLUSION**

25. Based on the facts and circumstances set forth above, there is probable cause to believe that on or about May 29, 2024, in the Northern District of California, MENDOZA-LICONA possessed with the intent to distribute a substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

/s/ Regan Bates  
REGAN BATES  
SPECIAL AGENT  
HOMELAND SECURITY INVESTIGATIONS

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 29th day of May 2024.

HONORABLE SALLIE KIM  
United States Magistrate Judge